We have a case, one now and one of three with a different panel. One we have now is United States v. Harris and Hopes, there's Gregory Harris, Keith Harris, numbers 16-1448, 1537, and 1644. Mr. Epstein? One thing I should note, I believe that we have some judges here who are from the Republic of Georgia, is that correct? Yes, Your Honor. Great, thank you. Welcome. It is a privilege to have you with us today. And if we speak too fast or anything, just raise your hand and we'll try to slow it down. Thank you, Your Honor. Good afternoon, may it please the Court. My name is Robert Epstein, I'm here today on behalf of the appellant, Mr. Thomas Hopes. With the agreement of my co-counsel and the permission of the Court, I'll be taking 10 minutes of our 15 minutes of argument time. Ms. Arkell will be taking the other five. And if I may reserve two minutes of my time for rebuttal and I'll be taking the other five. That's fine. Thank you, Your Honor. This Court has granted argument on three issues. I'll be directing myself to the first two of those. And I should note that I'm going to add a fourth issue, although if counsel wishes to comment on it afterwards, you can each have an additional week to submit something. And that's the question of the name Doe being affiliated with Keith Harris. Yes, Your Honor. If I may, I would actually like to begin with the second issue, because while I believe the first two issues are equally strong, the second issue is a bit simpler and I think it'll be a little bit less time consuming. And what we have here is a simple, blatant, egregious violation of Rule 701, because what happened here was that Case Agent Francis gave an opinion of heroin quantity regarding three weeks of telephone conversations, hopes he has recorded conversations. Three weeks, the majority of those calls were not only not played for the jury, they weren't even admitted into evidence. Wasn't it pretty clear from his cross-examination that he was, you know, it was an opinion? I mean, he was heavily cross-examined and couldn't the jury realize that, you know, his saying, well, of course, four times 63, that that really wasn't an accurate representation? No, Your Honor, not at all. Because what the courts have recognized is that the opinions of a case agent are particularly important and particularly dangerous because jurors will tend to give great weight to those opinions, which they will assume that the agents have a tremendous amount of experience and have loads of information that they may not have. So these kind of opinions. That was a pretty specific statement that would be tied to fact, that if he said it was more opinion than fact, the jury would have to credit that as well, wouldn't they? It was an incredibly important statement and opinion. And it was an opinion that the jurors cannot test for themselves because those calls were not played for the jury. They weren't even admitted into evidence. They didn't have an opportunity even to go back into the jury room and listen to them. So there is no court that has ever held that an agent can give an opinion about phone calls that are not even admitted into evidence. This court has put sharp limits as to how agents can interpret phone calls. What about what about the stamp bag purchases? Are they sufficient to make out the required evidence in this case? Assuming now that the admission of this opinion was error, then we get into the question of harmless error. And the question of harmless error, when we look at the stamp bag purchases, this court made clear in many cases United States versus Price, for example, being 1458 after 202. Harmless error analysis isn't a question of sufficiency. So we don't subtract the erroneously admitted opinion and ask, is there sufficient evidence remaining? We ask, could this improperly admitted opinion have contributed to the burden of burdens on the government to show a high probability that it couldn't? And let me explain why I think it's very likely that this opinion would have contributed to the verdict. Despite the stamp bag evidence, the government now accounts to twelve hundred seventy two grams on the on the basis of the stamp bags. Six hundred seventy two of those grams belong to Greg Harris from the other charged conspiracy. The district court found a Greg Harris is sentencing that the government had not even proven by a preponderance of the evidence that Greg Harris was in a conspiracy with Thomas Hopes. So if we subtract that six hundred seventy two grams, stamp bags of Greg Harris were left with well under a thousand. So it's very likely or there's certainly a strong possibility that the jury in getting to a thousand grams for Thomas Hopes and not for Greg Harris, by the way, but for Thomas Hopes looked at Francis's testimony. It was the only evidence of hopes is actual sales. And what they easily could have done here was to think, all right, well, how Francis testified to one week of calls. He came to sixty three grams. He then told us that the other three weeks that we haven't heard was the same. So we could take that sixty three grams. We could say that's two hundred fifty grams a month. And then we can look and say, all right, there's ten other nine other months of this conspiracy. We only heard evidence about four of them. But let's take four months and times two hundred fifty grams a month. And there's your thousand grams. But all on the basis of this improper testimony by Francis. But the district court's finding was not in conspiracy. That throws out the reasonably foreseeability, reasonable foreseeability test. But it still would permit from a buyer seller relationship that there was distribution going on, wouldn't it? Well, the issues I'm raising with respect to the lay opinion testimony doesn't go to the question of conspiracy. We are not disputing that there was sufficient evidence in this case that hopes and Keith Harris were conspiring together to sell heroin. But as case agent Francis said, they were small time dealers. The issue below the issue that all of this lay opinion testimony goes to is quantity. That's the essential issue here. Francis's testimony by which he testifies to three weeks that were not even played for the jury and says, you can take those three weeks and it's the same quantity as the one week that I played for you. That's incredibly prejudicial. What about the uptown gang? You had Officer Caterino. This was his beat in Homestead. Why could he have not testified that there was a group known as the uptown gang and that there were certain ways that they identified with each other, such as the U or the University of Miami shirts, which have a U on it, etc. There are several problems with his testimony in that regard. One, he never gave a basis for it. He never gave a foundation. We have no idea how it is that he believed there to be a conspiracy named Uptown where they made these different hand signals. Were they were these? Did he hear it from a confidential informant? Was it hearsay that wasn't before the jury? We have no idea. He had known these members since 2006 or 2007. He was the beat cop. He observed certain things. Didn't he speak from his personal knowledge? He didn't. He never explained to the court, to the jury, where that knowledge was coming from. Even if he had, it would still be the courts all say. If you look at the first circuit in Mises, the second circuit in Garcia, this court most recently in the unpublished decision of Wheeler, those kind of opinions that's invading the province of the jury. It's up to the jury to determine whether or not the government has proven whether or not there's an Uptown organization. Francis went even further and really the most troublesome, where he said Uptown is composed of four different subgroups, two of them being the conspiracies on trial, and that they're all working together. That wasn't there. Wasn't there evidence, though, that they were sharing supplies and customers helping one another out? There was some evidence in that regard, minimal. But again, you have the district court judge at sentencing finding they hadn't even proven by a preponderance that Greg Harris was conspiring with Hopes. And it's Greg Harris that's critical here because that's who the government is relying upon for Hopes and for Keith Harris to get to a thousand grand. The real problem here is that you have the case agents giving this testimony about Uptown, but it's never substantiated. We don't have any of that. Ten witnesses come in, non-law enforcement witnesses, and nine of them say nothing about Uptown. They're testifying pursuant to immunity agreements, pursuant to plea agreements, and they don't have anything to say about Uptown. This ends up being a trial by case agent, a trial by lay opinion testimony. And what the courts have said is that's entirely improper. It's invading the province of the jury. It's spoon-feeding the prosecutor's theory of the case to the jury. The government has to present actual evidence of Uptown, of the different groups being subgroups of Uptown and of working together. And there was minimal evidence beyond the case agent's testimony. Thank you. And we'll give them this article, and then we'll get you back in rebuttal. Thank you. May it please the court. My name is Louise Arkell. I represent Gregory Harris. Sorry, I put the emphasis on the wrong syllable. I'm sorry. I didn't notice. This circuit's case law has been absolutely clear with respect to lay opinion testimony. Lay opinion testimony is okay to interpret code or code-like conversations. It is not okay to interpret clear conversations, and it is not okay to interpret even unclear conversations if that information is equally accessible to the jury. Were objections lodged to testimony that was not coded that you think is objectionable? No, and we are clearly under plain error. So what is a district court to do as this agent is testifying as to the meaning of the conversations? Is the district court really supposed to say, wait a minute here, I know there's been no objection, but I think that's a 701 violation. I mean, is that what the district court is supposed to say when there's hearsay, when there's no objection? Is that really the kind of error that is clear, obvious error that the district court should have on its own said, this goes beyond the pale? I do think this court has found clear and obvious error when there's been no objection. So that certainly it has, this court has found that. So we said there was no. No objection. Well, no harm. It was harmless, so there's no substantial rights. We haven't had a situation where we just said it's enough error goes back without. I think I think this case is different, but I'd also think I think what the series of cases that this court has been addressing recently shows that there is sort of a lack of attention ahead of time to enforcing this. Numerous courts have talked about the need for enforcing the parameters of Rule 701. And I think this string of cases screened. Why couldn't counsel object to it? I mean, counsel may have had a strategic reason for letting this go on. Maybe have an ineffectiveness claim or some kind of objection later on. But is a district court really supposed to to police this and get into the strategy of defense counsel? I think when a when a agent is going is going on at this length, because, for example, in Jackson, this court talked about there not being any code in a particular conversation and no indication that the courts test that the agent's testimony or that I'm sorry, that the conversation was as broad as that. You could say that they were misleading the jury. I'm sorry, misleading the jury. Well, in in that case, it was also that I think it was also the breadth of his testimony. And I think here when an agent is essentially taking over narration of these calls, I do think there is a place. There's a place for all parties. I'm not suggesting it's only the judges. What specific ones are you pointing to that went beyond the pale, if you will? I think, for example, there was one conversation where he countrymen is talking about. He talks about where the something matches the price. I think the ice is a conversation, for example, where countrymen testifies that they are negotiating that maybe they're negotiating, putting Greg smack in the middle of the conspiracy and and talking about conduct and providing a definitive interpretation of that call. When a perfectly equal, different and plausible interpretation is that it's two people talking about prices and how to negotiate, but not together negotiating. I also think the stash house call is perhaps the most egregious place where countrymen added a definitive interpretation of the call, where there is no code referencing a stash house. And he supplies excuse me, where he says it is a stash house. And they are unlike unlike Jackson, where or I should say, unlike Fulton, where the government did not refer to it in closing. The government here referred to countrymen's testimony about it being a stash house. As he said, countrymen explained it was a stash house. And I'm sorry, might have come to that conclusion on their own. I mean, discussion about the fact that there weren't going to be any utilities and all they needed were the lights on. And they threw two hundred dollars together. And, you know, no one was going to live there. I mean, two plus two is four within a jury have realized that on their own. The jury absolutely could have reached that on its own. But it should have been supplied. That interpretation should have been supplied by the government. The jury might also have come to the conclusion that it was a bunch of friends establishing a man cave or a crash pad or whatever. Something else. There were other plausible interpretation utilities for for that kind of a race. I believe there was discussion about a change of plan about adding utilities, if I'm remembering correctly. But my point is, there were other plausible interpretations. The government supplied. A definitive interpretation of this one call. And later in closing, referred to it to countrymen's explanation of it as if it were fact, when it really was just argument that the government should have supplied. Also later saying. Is there any better evidence of conspiracy that puts the government at such an advantage? It's such an unlevel playing field because the government agent, which this court and many others have referred to, the authority a government agent has sort of almost inherently, even despite an instruction that they shouldn't weigh it separately differently. Whereas the defense is left. Is left with that interpretation. It's very difficult to challenge that interpretation, especially in closing. When the when the case agent has already supplied it. We go back to the. To what was there an objection of the issues that we're talking about under rule seven or one? And to what was there not an objection? First, let's start off with the uptown gang. If I may, I hate if I may refer back to my colleague. He was going to address the difference. We'll get him back. With respect to the countrymen's aspects that I that I have been addressing, there was no. OK. Thank you. Thank you, Mr. Cocos. Thank you. Good afternoon. May it please the court. Donovan Cocos on behalf of the United States. I want to take the issues in reverse order, just as I heard them. First, I wanted to make sure. Is the court clear or in agreement, I guess, on the standard of review for everything? Because ultimately it doesn't make a difference, I think, to the resolution of the case. But my oral presentation presumes plain error for everything. Wow. OK. The only reason I. So let me just. I mean, there were some blanket objections that there were. But let me. So let me just say this about it and then I'll move on. But the Hearst case, which I understand. Let me back up. I have a problem with with plain error on the foundation for the Uptown gang and a problem with plain error on the four. Three times. Sixty three. I think both of those would, for a district court, raise the problem that there's a problem there. So let me just address that if I can. And if I could just add to that. I mean, there were a number of cases cited by your opponents and, you know, Garcia, Greenwich, the. A host of cases and you only cherry picked on one, which is slayed from D.C. Circuit back in 1980. There's many, many since then. And you didn't even touch them. Garcia, for example. Well, I was actually working on trying to get under a twenty six thousand word. I was trying to get a word limit low enough that I thought the court would accept my brief. There's a lot. I didn't say Wheeler, even though it's great. I'm a pushover. Somebody asked me for an extension of words. I would normally vote in favor of it. So. So if I can. There's no. There were so many cases that they cited. Right. And yet none of them. Did you address other than a case from. Eight years ago. So I'm not sure when you say so many cases, they say, are you talking on a particular issue or I'm just confused. Well, look, that objection is sufficient. Yeah. Oh, right. Right. So they cited Greenwich. They cited Garcia. They cited Mejia. They cited Freeman from the Sixth Circuit. They cited Hampton from the D.C. Circuit and. And Hearst from here. Exactly. And, you know, an experienced district court judge, you don't need to do chapter and verse. Right. Found no foundation on the Uptown Gang. Speculative. Right. Covers it on 463. The only thing I'll say about that, then, and I'll just say this through Hearst, is Hearst to me is helpful to me because it involves. That was like a hotel president who was testifying that a rape that occurred on the property was unpreventable. But he had no percipient knowledge whatsoever. So everything that came out of his mouth was necessarily an opinion of some kind. So when a court hears objections, foundation, speculation, hearsay, and it knows it's only hearing opinion. Then I think it's pretty easy for the court to understand the lay opinions of what's being targeted. And that's what happened in the district court in Hearst. But in here, the two witnesses who offered the lion's share of the lay opinion testimony, Countryman and Francis, had significant percipient knowledge and interspersed with that were lay opinions. So that's why counsel had to make clear it was objecting to something as a lay opinion to alert the court and us. And a perfect example of that is page 291 of this record. Because there you can see Keese counsel's cross-examining Francis about something Countryman did. Well, immediately the AUSA says objection hearsay, thinking that this is going after percipient testimony. And Keese counsel says, no, no, no, I want an opinion. So with hearsay, do you have to say the rule? No, I don't think you have to say the rule. Why wasn't speculative good enough for the fact that he really doesn't have any personal knowledge that 63 times 4? Why wasn't that enough? Well, I don't know if that's necessarily going to personal knowledge or to the opinion. So, for example. Why? Well, so here's where I'm coming from on that. And this is maybe a good segue to the merits. Because when they say speculative, then the judge is going to say, please, please lay the foundation of the basis for this, which is the same as what's your personal knowledge. Right, right. But so the 701A actually has two prongs to it. As this court said in Wilburn v. Maritrans in 98, and then I think it's said again in Eichhorn. The first prong is just the rational basis, and that's experience. No, personal knowledge. And then personal knowledge is the second prong of that. Well, I mean, if you look at what Judge Raji wrote in Garcia, it looks like it's somebody that's right there. Or maybe somebody that's embedded. Or, you know, the closest I think you can come is Officer Caterino was in the Homestead area for 10 years, and he knew the area fairly well. But he didn't interact directly, for the most part, with the members of this so-called uptown gang. Well, he said he knew the Harris brothers since youth football. Did he say it's a drug gang? No, he didn't. He was not asked that question. In fact, we never, ever elicited that it was a gang because that might have been prejudicial. I mean, we called it uptown crew. And what's the basis for finding that there was a drug gang? Well, that was through the lay of town. So he didn't – Caterino's testimony is actually percipient on this point. He's saying here was the intersection where I saw the guys hanging out. Here was, you know, the clothing and the hand gestures, et cetera. The opinions about the drug part comes in through Countryman and Francis. But we have – we just have these three defendants here. And some of them never really talked – I mean, the brothers never really talked to each other. And the district court found that Greg wasn't in a conspiracy with Hopes. So if we don't have uptown gang being shown to be a drug gang, what do we have? Well, the court made that statement at sentencing for the purpose of adjusting the drug quantity. But it definitely did found that there was at least sufficient evidence to convict them of all being in the same conspiracy. I mean, if it hadn't really found that, why didn't it grant their motion for judgment of acquittal after we ended our presentation? Is there a sufficiency of the evidence challenge on appeal? Yeah, there is. I didn't think we were arguing it today, but there is. No, no. Yeah. What is the factual basis for Agent Francis' and Officer Caterino's statements about the existence, the membership, the signals, and the objectives of this uptown organization, which apparently you don't want to call a gang? Right. Well, we didn't call it a gang. Well, Caterino's – so he offers the percipient piece where he's the beat cop. He sees this going on in the neighborhood. He basically takes us to everywhere but the drug part. Little Brent testifies very reluctantly that uptown exists. It sells drugs. This is its signal. He's not the world's best witness. No, he's not. But on sufficiency of evidence, I mean, we get that at least. And then – so the rest, the opinions that come in through Countryman, he only mentions uptown once. And that's when he's asked, do you know how uptown packaged its drugs at page 509. That's it. I mean, what Harbor – it was a bunch of leading questions. What Harbor stated was he's familiar with an organization known as uptown, that uptown sells drugs, I don't know, quote, and that the U symbol, he believes, is associated with uptown. Right. That's it. And that's consistent with – and then Caterino builds upon that some more because he has the clothes. Then he's got the photographs of the defendants wearing the clothes, the stills from the videos where they're making the sign. And he said you could hear audible references to uptown, even though we weren't allowed to play the videos. So all of that's foundation for that. As far as the usefulness of it, I mean, you know, last week Pitt played Miami. So had that game occurred in Pittsburgh, you might see people wearing University of Miami gear walking around in Pittsburgh. It happens once every two years. What was there to support the – If you're from Pitt, you don't talk about their game last week. Yeah. What was there to support an inference that while their photographs probably showed that they were a gang for purposes of rapping, that they were a gang for purposes of selling drugs? What was there to support that inference? Well, it was – then it was the phone calls. At that point, it's the coded language in the phone calls, and that's why we needed the – But you don't have all of those people that were pictured in the photograph and the video on the calls. You've got the three here, right? Well, at trial, we presented what we had of the three. We had more, but those guys became kind of irrelevant as they pled out and such. So to streamline the trial, we were – They're irrelevant. You've got to find a conspiracy among these three, don't you? Correct. Yes. And the verdict – What's your best evidence of that? Well, the verdict, Your Honor, because – The what? The verdict, and here's why. The – for Harris – Stop by saying he's working backwards. Yeah, okay. Yeah, I'm sorry. This is now going all over the place. So the verdict showed that the jury found Keith and hopes to have conspired to distribute at least 1,000 grams of heroin. The stamp bags that the two of them purchased amounted to 480 grams. That's it. So even if you add to that the 63 grams that Francis testified to and multiply that times four for 252, you get something like 732 grams. It's not enough. No one ever asked that witness to multiply it times four and then multiply it times four again, one for each month. We were only up on hopes' phone for a month. So that's brand new. So the math doesn't get you. It doesn't get them there. And as far as Keith and Germany, Keith and Germany together had 792 grams worth of stamp bag purchases. If you had multiplied the heroin purchases times four and added those to Keith's, I'm sorry, to Germany's, to Greg's conviction, that's over 1,000. So we know the jury didn't do that in that case. Because if you just added Greg's and Germany's stamp bags plus hopes' heroin multiplied times four, they would have convicted him of 1,000. But then you have to show that somehow this is a group that's coordinating together in order to get those numbers. In your brief, and I'm talking about the opposition to the hopes brief at page 76, note 29, you say the law enforcement officers affixed the Uptown label in this case. What do you mean by affixed? I don't remember that. Honestly, it was a long brief. I don't remember that sentence. Affixed the Uptown label. A-F-F-I-X-E-D. Yeah, but I don't know the rest of the sentence in that brief. I'm sorry. I have it. Yeah. I will say, I mean, the officers were able to say, you know, Caterino in particular was able to say this was the sign, here's the street corner where you could see, you know, members of Uptown doing the sign. That's right in the neighborhood where this investigation occurred, where he spent however many hours. And then he has the stills and the social media photographs showing these defendants doing that. What you say on footnote 29 is, it's a long footnote, and it says at the end that the call showed that appellants bought, processed, and sold heroin together. Affixing the name Uptown, in quotes, to this cabal, well, helpful conceptually, did not harm appellants any more than their own statements and conduct did. Right. That's right. Because so Uptown is sort of a handy label for this association that you see happening among the defendants through the phone calls, through Saldana's testimony, because remember, she's seeing them come in in pairs and trios together to buy stamp bags through the social media footage. It's helpful to give a handy name. Wasn't it Saldana or was it Hernandez that said that they weren't really familiar with the Uptown label? I don't recall. Hernandez could have said that. Pukie is Hernandez, I guess. Pukie. I mean, she wasn't that reliable because clearly she was testifying untruthfully about the amount, the number of stamp bags or bricks she was processing. Possibly as was Harber. Well, except he said he was familiar with Uptown. In a host of other inconsistencies. Right. Right. But the bottom line is that is a handy label for the collection and the association and the relationships you see. But if you take that away, we still have the calls. We still have the conduct of the defendants. We still have the stamp bag numbers, everything else. Before I go on to the Doe issue, which, again, I'm saying the counsel can supply something within a week if they want to supplement. The Stash House. Isn't Countryman's testimony about the Stash House, the stamp bags and the heroin packaging, just like the testimony that was ruled inadmissible recently by our court in the Jackson case? The reason I think it's not is I think there is some code in the Stash House testimony. I mean, they refer to it as a spot. They refer to a couple other pieces of code. It's not dense code by any means. But I will say the thing to remember is before Countryman takes the stand, we actually have an expert, not a lay opinion person, an expert named Herb Strobel get up and testify to the practices of bagging heroin in Western PA and stamp bags to code to even mention Stash Houses at one point. So Countryman's testimony just plugs into that. We never argued that there actually was a Stash House. We weren't able to find one. Wasn't that testimony particularly damaging to, for example, Greg in Germany? I don't think it was any more damaging than that. If you just look at the phone call, you can tell something is afoot. Don't get over the 100-gram threshold as to Greg without that testimony about Stash House. I don't know how we don't get over the – that's not the only thing linking them to hopes, if that's what Your Honor is talking about. You get well over the 100-gram threshold as long as he's linked to hopes in any way. And we have him saying he's like making sure Pookie is processing heroin for hopes in at least one other call. So that one call is not the only thing linking him to hopes. What about the Doe identification? So that, Your Honor, you brought that up, and I'm not sure what that issue is because this is the first time I'm hearing it. How do you have Keith Harris identified with Doe other than the statement of one of the agents? Who else said that Mr. Harris had a nickname by what people called him as Doe? Well, I have to – so I have to check. I know some of the calls – the calls, the actual call transcripts, you can see them. They refer to Doe or Kido or – But they base it on their general investigation, and it drew a link between Doe and Keith Harris. But who said – who gave the foundation that said that Keith Harris has a nickname of Doe? I'm trying – I think it might have been countrymen. And it's – the way the foundation was laid was it was somebody who listened to the calls and knew what their voices sounded like, and you can tell by looking at neighboring calls, you know, or even that call itself whose voices are on the phone. Well, in your opposition brief, you say there was sufficient evidence at trial to conclude that Doe was the nickname of Keith. But was that evidence ever presented to the jury to make the determination? And you can – when you get back, you can add that in as – I don't have – yeah, I'm sure there was. I couldn't find anything. Yeah, okay. So I'm sure that there was because, you know, again, if you look at the – and then you can tell from neighboring calls who Doe is, and then that voice is later identified as Keith Harris. If there was no direct testimony with respect to that, then how do we treat the statement that was made? No direct testimony? I'm not sure. You mean, like, percipient testimony? Well, I mean, I think you treat it like the rest of the – I don't know that it's even circumstantial evidence. If I have someone who recognizes my voice on the phone and they can hear other people referring to me by my nickname and maybe even me answering to that nickname, I mean, I think that's pretty direct. That's not as direct as one of my buddies saying I used to call him this. But, you know, I think it should suffice. The last piece, I guess, is the extrapolation testimony. I'm out of time. I don't know if you, Your Honors, wanted to – Yeah, three more minutes. Okay, please. The extrapolation testimony, I agree. I actually think something's wrong with it. I don't think it's a 701 problem, per se, because to me, when I looked at this, it seems like the issue is you have somebody giving a lay opinion based in part on a summary that's not coming in. So as we know from ICORN, when that happens, the testimony has to satisfy both 701 and 1006. And I think the issue here is that, as we know from the Lynch case, which I think Your Honors were on that panel this year, a summary is fine even if the underlying evidence that it's based on doesn't come in, but it can't refer to information that's not in the original evidence. And that's what I think the problem is with asking that question of Francis and getting that answer, as it's a 1006 problem. But in the Wheeler case that counsel cited, same kind of situation. There was opinion testimony that was arguably based in part upon a summary that shouldn't have come into evidence that violated 106, but there's not a proper objection on that, not under 1006, and there's no cross-examination on that issue. And we have kind of a similar situation here. They cross-examine him heavily, but not on any extrapolation, and we never advance the extrapolation. So that's another reason that that makes all of this harmless. All right. So I've only used about a minute and ten seconds. Are there more questions? Okay. The United States would ask the Court to affirm. Thank you, sir. Mr. Epstein. Do you want to begin addressing the issue to what there were objections? Were there blanket objections to anything in particular? Were there specific objections as to any of the 701 evidence? Yes, Your Honor. The first two issues were preserved in this case. So if we start with Francis testifying to three weeks of calls that weren't admitted into evidence, there was an objection right at that moment, and the objection was it assumes facts not in evidence, and without putting those calls in, that's an improper opinion to speculate on. That perfectly preserves that issue. As far as the Uptown testimony, right at the beginning of Francis's testimony on Uptown, there was an objection. I'm going to object. He hasn't made a foundation as to how he came to know this conclusion and what these conclusions were based on. Okay. There we go. Same thing. As soon as he started testifying to the fact that individuals make this kind of a sign when they're a member of Uptown, there was an objection, foundation, no foundation that connects this hand sign to this reference he's making to Uptown, and he never ended up providing one. So the first two issues are perfectly preserved. You know, this case is very factually dense. It's a very long trial. It's easy to get lost in the weeds, and I want to try to pull back for a second because I think the legal issues are actually fairly simple, just the facts are somewhat complex. So government counsel made a very important concession when he was up here, and the concession is that when you look just at Hopes and Keith Harris, conspiracy 57, they didn't come close to proving a kilogram. He admitted that. And what they need to do then is to get to a kilogram, they have to count Greg Harris's stamp bags from the other conspiracy. So that's the key facts here, and they're not in dispute. And when we look at the first two legal issues, and really the third as well, the issue for Hopes is if there's error, and we submit there clearly is on these issues, then when looking at the harmless error analysis, the government has to show that there's a high probability that those errors did not contribute to the jurors coming to a thousand grams, to the jurors not counting Greg Harris against Hopes, or coming to a thousand grams in some other improper way. So when we look at the Uptown issue, for example, the district court finds there's not actually evidence connecting Hopes to Greg Harris, but the government connects Hopes to Greg Harris through this Uptown argument, by arguing through the case agents and only through the case agents, that there's a bridge between these conspiracies, and the bridge is Uptown. They all belong to Uptown, these groups all work together, and that's why you can count Greg Harris against Hopes. The problem is the agent's testimony on that point, that lay opinion testimony, was completely improper, and there was never any evidence to support it. And yes, Judge Soreka, there is some evidence of them working together, but again, the issue for harmless error purposes is not sufficiency. The issue is, could the error have contributed to the verdict? And we have such minimal evidence of them working together. In fact, the district court judge says this to Greg Harris, doesn't even prove it by a preponderance here. When you come to Francis's testimony, and we think, well, could this improper testimony, about three weeks, that all the courts are agreed on, you can't have an agent testifying, giving opinions about phone calls that aren't even admitted to the jury. A lot of the courts say you can't have an agent testifying about phone calls that are admitted, but aren't played. Here we go even beyond that. They're not even. Yet there are cases where convictions have been affirmed where they weren't played. Actually, when we look at Freeman, for example, that's reversed,  weren't admitted, and the agent's interpretation of the phone call in Freeman, the court found was plausible, but they said the agent's improper testimony could have contributed to the verdict. Same here. I mean, when we look at this, again, the issue is, for the government's point of view, they have to have Greg Harris's drugs being attached to Hope's. District court says there's not even a preponderance of the evidence. And then you have Francis. Well, how did they get to 1,000 in this case against Hope's? They didn't get to 1,000 for Greg Harris, which seems to indicate they didn't count Hope's against Greg Harris. So there's certainly a possibility that when it came to Hope's, they didn't count Greg Harris against Hope's either. So how did they get to 1,000? Well, they take Francis's testimony, as I explained before, where he goes from 65 to 250 over the course of one month, and they improperly start speculating as to the other months, all on the basis of this improper testimony that never should have been allowed, over objection. Thank you very much. Thank you to all counsel for a very well-presented argument. I would ask if counsel could get together with the clerk's office and have a transcript prepared of this oral argument and just split the cost evenly. And as to the identification of Keith Harris as Doe, if each side could submit, if you wish, by 4 p.m. a week from today, five double-spaced pages as to if there's any other evidence in the record beyond the agents testifying that Keith Harris was nicknamed Doe. Is Harris represented here today? Yes, he is. Okay. All right, just wanted to make sure you were aware. All right. Thank you. I appreciate the opportunity, and we will. And then finally, we want to thank our colleagues from the Republic of Georgia